IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| VICKIE COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:17-cv-234-WKW-WC |
| | ) | |
| HWASHIN AMERICA CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# ORDER AND
# RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.    Introduction

On April 18, 2017, *pro se* Plaintiff filed a complaint against Hwashin America Corporation ("Hwashin" or "Defendant").[1]  Doc. 1.  Plaintiff's complaint alleges violations of Title VII of the Civil Rights Act of 1964 stemming from her termination, failure to promote, harassment, and failure to follow due process requirements set forth in the employee handbook.  *Id.* at 1, ¶ 8.  Plaintiff states that Defendant's conduct was discriminatory based upon race, sex, and age.[2]  *Id.* at 1, ¶ 10.  Plaintiff also seeks relief pursuant to the Age Discrimination in Employment Act ("ADEA"), Equal Pay Act

---

[1] Plaintiff's complaint also named another defendant, Terry Sedan, an employee of Hwashin.  On October 17, 2017, Mr. Sedan was dismissed as a defendant upon the District Court's adoption of the undersigned's recommendation.  Docs. 23, 27.  Although certain pleadings spell Mr. Sedan's surname "Sedam," the undersigned will use the spelling from Plaintiff's complaint.  If this spelling is incorrect, the undersigned intends no disrespect.

[2] Plaintiff's complaint also alleges "other discrimination to be named and identified by amendment."  Doc. 1 at 1, ¶ 10.  Plaintiff filed a motion to amend the complaint (Doc. 37), which the undersigned denied.  Doc. 51.  Plaintiff has made no further motion to amend her complaint.

("EPA"), "Alabama Breach of Employment Handbook Contract Alabama Law," and the Due Process Clause. *Id*. at 3, ¶ 19.

On May 15, 2017, Defendant filed an answer. Doc. 11. On June 28, 2018, Plaintiff filed a motion for summary judgment to which she attached declarations signed by Alexander Wilson and Brandon Lawson, as well as a document purporting to show the names, sexes, and "[p]robable [a]ges" of certain "Team Leaders" in Defendant's "stamp department" both before and after her termination. Doc. 54, 54-1–54-3. On July 2, 2018, Defendant filed a motion for summary judgment and brief. Docs. 56, 57. On July 23, 2018, Defendant responded in opposition to Plaintiff's motion for summary judgment. Doc. 62. On July 27, 2018, Plaintiff filed an "AFFIDAVIT Reply in Response to Defendant's Motion for Summary Judgment," to which she attached Defendant's initial disclosures and responses to interrogatories and requests for production. Doc. 67, 67-1–67-3. On August 3, 2018, Defendant filed a reply in support of its motion for summary judgment. Doc. 69.

In addition to the cross motions for summary judgment, pending before the court is Defendant's motion asking the court to strike certain portions of Plaintiff's evidentiary submissions in support of her motion for summary judgment. Doc. 63. On August 7, 2018, Plaintiff replied in objection to Defendant's motion to strike. Doc. 70.

Also pending before the court is Plaintiff's motion for alternative dispute resolution filed July 18, 2018. Doc. 61. On August 7, 2018, Defendant responded in opposition, stating that it was "not currently interested in pursuing a settlement" based on its pending motion for summary judgment. Doc. 66 at 2.

2

Because the matters before the court are fully briefed, they are ripe for resolution or recommendation to the United States District Judge.[3]  Upon consideration of Defendant's motion to strike (Doc. 63), the undersigned will GRANT the motion.  Upon consideration of the parties' cross motions for summary judgment, the evidentiary materials filed in support thereof, the pleadings, and for the reasons that follow, the undersigned Magistrate Judge RECOMMENDS that Plaintiff's Motion for Summary Judgment (Doc. 54) be DENIED, that Defendant's Motion for Summary Judgment (Doc. 56) be GRANTED, and that this case be dismissed.  Accordingly, the undersigned finds that Plaintiff's motion for alternative dispute resolution (Doc. 61) is DENIED as MOOT.

## II.    Defendant's Motion to Strike

The undersigned turns first to Defendant's pending motion to strike (Doc. 63), because such determination may be pertinent to the recommendation on the parties' cross motions for summary judgment.  Defendant moves to strike Exhibit A to Plaintiff's motion for summary judgment (Doc. 54-1), an evidentiary submission in which Plaintiff has compiled the names, sexes, and "[p]robable [a]ges" of Team Leaders in Defendant's "stamp department" both "before and after [Plaintiff's] termination."  Doc. 54-1 at 1.  In indicating the alleged Team Leaders' ages, Plaintiff has described them in terms of decades, such as "20's," "30's," and "40's."  *Id.*  Defendant objects that this evidentiary submission, which on its face contains only "probable ages," is "based solely upon Plaintiff's speculation" and lacks a foundation of personal knowledge.  Doc. 63 at 2.

---

[3] On April 24, 2017, the District Judge referred this case to the undersigned "for further proceedings and determination or recommendation as may be appropriate."  Doc. 4.

The undersigned agrees.  Federal Rule of Civil Procedure 56(c)(4) governs the form of affidavits in support of a motion for summary judgment and provides that such an affidavit "*must be made on personal knowledge*, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4) (emphasis added).  Similarly, Federal Rule of Evidence 602 states that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the *witness has personal knowledge of the matter*."  Fed. R. Civ. P. 602. Consequently, when considering a motion for summary judgment, "a court does not accept testimony that is not based on personal knowledge."  *Sullivan v. United Parcel Serv., Inc.*, No. 1:07-cv-0976-JEC-LTW, 2008 WL 11320143, at *5 (N.D. Ga. June 16, 2008) (citation omitted).  A court is "bound to accept . . . as true" statements in an affidavit or declaration that is made on personal knowledge, "unless the context demonstrate[s] otherwise." *Martin v. Rumsfeld*, 137 F. App'x 324, 326 (11th Cir. 2005).

Clearly, in this case, the affidavit is not based on Plaintiff's personal knowledge with respect to the Team Leaders' ages.  Plaintiff's submission openly acknowledges that it is based on her speculation, not personal knowledge, regarding the Team Leaders' ages. Therefore, Plaintiff's evidentiary submission fails to provide a foundation sufficient to show that the actual ages of the named Team Leaders are within her personal knowledge.

Accordingly, the undersigned will GRANT Defendant's motion to strike (Doc. 63) to the extent that it will strike and exclude from consideration Plaintiff's statements regarding the probable ages of the Team Leaders.  Because Defendant did not object to

Plaintiff's statements regarding the names and sexes of the Team Leaders, the undersigned will not strike those portions of Plaintiff's evidentiary submission.

### III.   Motions for Summary Judgment

The parties have filed cross motions for summary judgment.  Docs. 54, 56.  Before addressing the motions, the undersigned will provide the applicable standard of review.

### A.  Standard of Review

Under Federal Rule of Civil Procedure 56(a), a reviewing court "shall grant a motion for summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Only disputes about material facts will preclude the granting of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.  An issue is 'material' if it might affect the outcome of the case under the governing law."  *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248).

Under Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the non-moving party must "go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[ ], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

If the nonmovant "fails to properly address another party's assertion of fact" as required by Rule 56(c), then the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2) and (3).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted). A reviewing court is restrained during summary judgment proceedings from making the sort of determinations ordinarily reserved for the finder of fact at a trial. *See Strickland v. Norfolk S. Ry. Co.*, 692 F.3d at 1154 (citations and quotations omitted) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

### B. Undisputed Facts

The undersigned has carefully considered the pleadings in this case and the documents in support of the parties' motions for summary judgment. The parties' submissions establish the following relevant undisputed facts.[4]

Defendant is an automotive manufacturer for Hyundai Motors Manufacturing of America. Doc. 58-2, Simmons Dec. ¶ 2. Defendant has policies in place strictly prohibiting any form of discrimination, retaliation, or harassment on the basis of race, age, or sex in all terms and conditions of employment. *Id*. ¶ 5, Att. 1 Sec. 1.4. These policies are set forth in a "Team Member Handbook" which was distributed to[5] and applied to all employees. *Id*. ¶ 5. The Team Member Handbook states that employees who believe they have witnessed or been subjected to any unlawful conduct should report the conduct to their supervisor or

---

[4] Presumably in response to the undersigned's order to show cause why Defendant's motion for summary judgment should not be granted (Doc. 59), Plaintiff filed a document entitled "Vickie Coleman's AFFIDAVIT Reply in Response to Defendant's Motion for Summary Judgment et al. and Relief Requested." Doc. 67. However, Plaintiff's filing is barely intelligible and mainly consists of copies of Defendant's initial disclosures and responses to Plaintiff's interrogatories. Docs. 67-1, 67-2. Other than certain isolated statements made in this affidavit, which the undersigned has endeavored to understand and include in the undisputed facts to the extent that Defendant does not dispute the statements (*see* Doc. 69), Plaintiff has failed to set forth a statement of facts apart from the allegations of her complaint. Moreover, because Plaintiff has not intelligibly responded to Defendant's motion for summary judgment, she has not challenged Defendant's recitation of undisputed facts, except as noted herein. Accordingly, the undersigned largely adopts Defendant's statement of facts because it is undisputed by Plaintiff. *See* Fed. R. Civ. P. 56(e)(2).

[5] In its statement of undisputed facts, Defendant contends that Plaintiff received a copy of the Team Member Handbook on her first day of work and that she also received copies whenever the handbook was updated. Doc. 57 at 6. Plaintiff disputes that she was issued a copy of the handbook. Doc. 67 at 3. The undersigned notes, however, Plaintiff's deposition testimony that she received the handbook when her employment began and that she also received handbook updates. Doc. 58-1 at 7. Additionally, Plaintiff signed a "Team Member Acknowledgement Form" on her first day of work, acknowledging that she received the handbook. Doc. 58-1 at 29. Based on Plaintiff's testimony, the signed acknowledgement form, and the lack of contrary supporting evidence proffered by Plaintiff, the undersigned finds the fact that Plaintiff received a copy of the handbook to be undisputed. *See* Fed. R. Civ. P. 56(e)(2). In any event, this fact is not particularly relevant to Plaintiff's claims herein.

8

to Defendant's human resources department. Doc. 58-1, Pl.'s Depo. 27:1-4; Doc. 58-2 Simmons Dec. ¶ 5, Att. 1, Section 1.4.

Defendant also had in effect "Team Member Conduct and Work Rules," which were distributed to and applied to all employees, and which outlined and described specific requirements and expectations for employee conduct. Doc. 58-2 Simmons Dec. ¶ 15, Att. 1, Section 3.1. These rules include a list of "major offenses that would almost always result in discharge," including "[u]ndermining the authority of upper management." *Id*. Defendant's Team Member Handbook also states that, "[t]his handbook is not a contract nor offer to contract" and that team members are employed at will, unless they "have a written employment contract signed by the president of Hwashin . . . and approved by the designated Hwashin America Corporation Management Team by written resolution." *Id*., Att. 1, Sec. 1.1.

Plaintiff began working with Defendant as an operator in the Stamping Department on March 21, 2005. Doc. 58-1, Pl.'s Depo. 23:3-11; 27:18-20, Att. Ex. 3. In 2008, Plaintiff was promoted to "Team Leader" in the Stamping Department. *Id*. at 30:13-22; 32:2-7; 33:3-9, Att. Ex. 4. Team Leaders are hourly workers who perform production work and also help monitor team members in the course of their work. Doc. 58-2 Simmons Dec. ¶ 7; Doc. 58-3, Sedan Dec. ¶ 3. Team Leader is not a management role, but team Lead Leaders help convey management's directives and implement company goals. *Id*.

In 2013, Plaintiff was transferred to a new supervisor, Terry Sedan, after Plaintiff's supervisor at the time complained that she was not getting along with other employees. Doc. 58-1, Pl. Depo 35:12-13; 43:16-20; 50:16-17; Doc. 58-2, Simmons Dec. ¶ 9; Doc. 58-

3, Sedan Dec. ¶ 3.   Between 2012 and 2015, Plaintiff received annual pay increases, partially because of performance evaluations completed by Mr. Sedan. Doc. 58-1, Pl. Depo 43:1-5, Att. Ex. 8. In April 2015, Plaintiff reached the top of Defendant's pay scale for Team Leaders, which does not provide for pay increases based on length of employment beyond ten years. Doc. 58-1, Pl.'s Depo. 37:21-38:12; 74:1-5; 87:15-18; Att. Ex. 8.

The crux of Plaintiff's complaint involves two incidents that occurred in 2016.[6]  In June 2016, Mr. Sedan directed Alexander Wilson, an African American male, to stay after his shift to finish counting parts. Doc. 58-3, Sedan Dec. ¶ 4; Doc. 58-5, Wilson Dec. ¶ 3. Mr. Wilson's sister, Alexis Wilson, an African American female, also stayed to help count parts. Doc. 58-1, Pl.'s Depo. 51:20-52:14; Doc. 58-3, Sedan Dec. ¶ 4; Doc. 58-5, Wilson Dec. ¶ 3. Plaintiff disagreed with Mr. Sedan's decision to let employees stay after the end of the shift to count parts and told Mr. Alexander and Ms. Wilson that she had clocked them out and to go home. Doc. 58-1, Pl.'s Depo. 51:20-52:16; Doc. 58-3, Sedan Dec. ¶ 4, Doc. 58-5, Wilson Dec. ¶ 3. Plaintiff did not consult with her supervisor, Mr. Sedan, as she was required to do, before sending Mr. Alexander and Ms. Wilson home. Doc. 58-1, Pl.'s Depo. 51:20-52:16; Doc. 58-3, Sedan Dec. ¶ 4; Doc. 58-5, Wilson Dec. ¶3. Following this incident, Plaintiff complained to Kista Hinson, a human resources assistant manager, about Mr. Sedan letting Mr. Wilson and Ms. Wilson work late. Doc. 58-4, Hinson Dec. ¶ 4; Doc.

---

[6]  In the complaint, Plaintiff made a number of allegations related to events occurring in 2009, 2010-2012, and 2014.  *See* Doc. 1-1 at 1–2.  However, because Plaintiff has not provided the court with a statement of undisputed facts related to these incidents and has otherwise failed to provide evidentiary support, the undersigned will not consider these facts as undisputed.  *See* Fed. R. Civ. P. 56(e)(4).  The undersigned finds *infra*, as it has previously observed (*see* Doc. 51 at 4–5), that claims based on these factual allegations are time barred.

58-1, Pl.'s Depo. 50:8-51:9. The following day, Mr. Sedan met with Plaintiff and Mr. Wilson to discuss the incident.  Plaintiff did not make any complaints during this meeting. Doc. 58-3, Sedan Dec. ¶ 5; Doc. 58-5, Wilson Dec. ¶ 4.

The second incident involves an incentive program in which Defendant provided gift cards to production workers if a line had met its production targets. Doc. 58-1, Pl.'s Depo. 56:15-17; Doc. 58-2, Simmons Dec. ¶ 10; Doc. 58-3, Sedan Dec. ¶ 7. The gift cards were typically distributed to supervisors who, in turn, distributed the gift cards to team members. Doc. 58-1, Pl.'s Depo. 56:18-57:2; 58:12; Doc. 58-2, Simmons Dec. ¶ 10; Doc. 58-3, Sedan Dec. ¶ 7. Mr. Sedan always distributed the gift cards to team members who worked on the line or press, but not to the team leader. Doc. 58-2, Simmons Dec. ¶ 10; Doc. 58-3, Sedan Dec. ¶9.  In June 2016, Mr. Sedan distributed gift cards to four workers in the Stamping Department who had met their production target for the previous month. Doc. 58-1, Pl.'s Depo. 58:18-20; 59:4-15; Doc. 58-2, Sedan Dec. ¶ 9; Doc. 58-5, Wilson Dec. ¶ 6; Doc. 58-6, Lawson Dec. ¶ 4.  One of these workers was Brandon Lawson.  Doc. 58-1, Pl.'s Depo. 60:2-3; Doc. 58-2, Sedan Dec. ¶ 9; Doc. 58-5, Wilson Dec. ¶ 6; Doc. 58-6, Lawson Dec. ¶ 4.  Mr. Lawson had been working for approximately three weeks, but Mr. Sedan determined that because of Mr. Lawson's contributions and hard work, he deserved the gift cards. Doc. 58-3, Sedan Dec. ¶ 9. Plaintiff disagreed with Mr. Sedan's decision. Doc. 58-1, Pl.'s Depo. 63:10-64:1; Doc. 58-3, Sedan Dec. ¶ 10. She later told Mr. Lawson that he did not deserve the gift cards and that she should have received them because he had not been employed long enough. *Id*.; Doc. 58-1, Pl.'s Depo. 63:22-64:1; Doc. 58-6, Lawson Dec. ¶¶ 1, 4. Plaintiff told Mr. Lawson that he should give her his gift

cards, which he then did. *Id*. Plaintiff later used the gift cards. Doc. 58-1, Pl.'s Depo. 63:22-64:3.

After learning of Plaintiff's actions, Mr. Sedan immediately reported the incident to the human resources department. Doc. 58-2, Simmons Dec. ¶ 11; Doc. 58-3, Sedan Dec. ¶ 10; Doc. 58-4, Hinson Dec. ¶ 6. On June 7, 2016, Plaintiff was suspended pending an investigation. Doc. 58-1, Pl.'s Depo. 66:19-21; Doc. 58-2, Simmons Dec. ¶ 12; Doc. 58-4, Hinson Dec. ¶ 7. Human resources manager, Josh Simmons, and assistant manager, Kista Hinson, conducted the investigation. *Id*. Following their investigation, it was determined that Plaintiff had taken the gift cards from Mr. Lawson, and that, in so doing, she had undermined Mr. Sedan's authority and misappropriated company property intended for another employee for her own personal gain. Doc. 58-1, Pl.'s Depo. 66:19-67:13, Att. Ex. 9; Doc. 58-2, Simmons Dec. ¶ 14. As a result, her employment was terminated on June 23, 2016. Doc. 58-1, Pl.'s Depo. 67:11-13; 68:2-7, Att. Ex. 9; Doc. 58-2, Simmons Dec. ¶ 15. The decision to terminate was made jointly by Mr. Simmons and Ms. Hinson. Doc. 58-1, Pl.'s Depo. 66:19-67:13; Doc. 58-2, Simmons Dec. ¶ 15; Doc. 58-4, Hinson Dec. ¶ 9. Mr. Sedan played no role in the decision to terminate Plaintiff's employment. Doc. 58-2, Simmons Dec. ¶ 15; Doc. 58-3, Sedan Dec. ¶ 11; Doc. 58-4, Hinson Dec. ¶ 9.

Defendant's human resources department has received no other reports of employees taking gift cards from other employees. Doc. 58-2, Simmons Dec. ¶ 16; Doc. 58-4, Hinson Dec. ¶ 10; Doc. 58-1, Pl.'s Depo. 68:15-20. Several years ago, Safety Coordinator Chuck Branum made Mr. Simmons aware that some drums were missing, but

it was never determined that another employee had taken the drums. Doc. 58-2, Simmons Dec. ¶ 20.

Alexander Wilson, an African American male, replaced Plaintiff as Team Leader in the Stamping Department. Doc. 58-2, Simmons Dec. ¶ 17; Doc. 58-3, Sedan Dec. ¶ 12. At the time of her termination, Plaintiff was paid $14.40 per hour. Doc. 58-2, Simmons Dec. ¶ 17. In August 2016, Mr. Wilson received a raise from $12.05 per hour to $12.80 per hour, and on November 29, 2016, he received a raise to $13.55 per hour. Doc. 58-2, Simmons Dec. ¶ 17. No Team Leader who has been employed at Defendant for ten years or more has received a higher pay rate than Plaintiff did at the time of her termination. Doc. 58-1, Pl.'s Depo. 87:15-18; Doc. 58-2, Simmons Dec. ¶ 17.

### C.  The Substance of the Parties' Motions

At the outset, the undersigned notes that Plaintiff's claims are not clearly stated in her complaint and it is unclear upon which claims she seeks summary judgment.  From the undersigned's review, Plaintiff alleges violations of Title VII, the ADEA, the EPA, "Alabama Breach of Employment Handbook Contract Alabama Law," and the Due Process Clause.  Doc. 1, at ¶ 19.  These claims arise from allegations of discriminatory conduct based upon race, sex, age, and "other discrimination to be named and identified by amendment."  *Id.* at 1, ¶ 10.  In her motion for summary judgment, she specifically mentions only her claims under the ADEA and Title VII, leading the undersigned to conclude that these are the only claims on which she seeks summary judgment.  Doc. 54 at 1–2.  The only evidence that Plaintiff cites in support of summary judgment are the affidavits filed by Mr. Wilson and Mr. Lawson, and her evidentiary submission regarding

the names, genders, and "[p]robable [a]ges" of Defendant's Stamping Department Team Leaders before and after her termination. Docs. 54-1, 54-2, 54-3. As discussed above, the undersigned has stricken and excluded from consideration Plaintiff's proffered evidence regarding the Team Leaders' probable ages.

Defendant moves for summary judgment on all claims, arguing that many of Plaintiff's claims are time-barred and that she has failed to state a claim for pay discrimination under the EPA or Title VII; failed to state a claim for discrimination under Title VII or the ADEA; failed to administratively exhaust claims for harassment or failure to promote; cannot establish a claim for retaliation under Title VII, the ADEA, or EPA; and cannot establish a claim for breach of any employment handbook or contract. Doc. 56 at 1–2. The undersigned will now address the merits of the parties' motions for summary judgment.

### i.   Plaintiff's Time-Barred Claims

Defendant first argues that many of Plaintiff's claims are time barred. Doc. 57 at 15. The undersigned agrees. As preliminarily discussed in the undersigned's order on Plaintiff's motion to amend complaint, several of the allegations in Plaintiff's complaint stem from actions or inactions taken by certain individuals employed by Defendant occurring in 2009, 2010-2012, and 2014. Doc. 51 at 4–5. Outside of bare allegations, however, Plaintiff has failed to factually develop any of these claims. In any event, those allegations cannot form the basis of her Title VII or ADEA claims, because Plaintiff would have been required to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within one hundred and eighty days of those allegedly

14

illegal actions.  42 U.S.C. § 2000e-5(e)(1) (stating that a charge of discrimination must be filed with the EEOC "within [180] days after the alleged unlawful employment practice occurred").  Plaintiff did not file an EEOC charge until June 30, 2016.  *See* Doc. 58-8.  So, even if the 2009-2014 facts alleged by Plaintiff were true and in fact discriminatory, Plaintiff failed to exhaust her administrative remedies within the statutory timeframe for Title VII or the ADEA.  Thus, it is now impossible for Plaintiff to state a claim based upon those facts.  *See Alexander v. Gardner-Denver*, 415 U.S. 36, 47 (1974) (the failure to timely file with the EEOC is ordinarily a bar to suit).

Similarly, the 2009-2014 facts alleged by Plaintiff cannot form an EPA claim because the statute of limitations for filing such a claim is, at the most, three years.  *See* 29 U.S.C. § 255(a) (a plaintiff must file a claim under the EPA within two years after the cause of action accrued, or three years if the violation is willful).  Thus, even if the events between 2009-2012 occurred as Plaintiff says they did, Plaintiff did not file suit in this court until April 2017, which is clearly outside of the three-year statutory limit.  Further, the facts that occurred in 2014 or earlier have nothing to do with a violation of the EPA, which prohibits employers from paying different wages to employees of different sexes for equal work in jobs requiring equal skill, effort, and responsibility.  *See e.g. Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995).  Accordingly, even if Plaintiff would not be precluded from asserting an EPA claim because it is time-barred based upon the alleged 2014 conduct, the 2014 facts have nothing to do with a claim under the EPA.

Therefore, the undersigned concludes that the aforementioned claims based on conduct alleged in 2014 or before are time barred and should be dismissed.

###### ii.     Plaintiff's Claim for Age Discrimination under the ADEA

As Defendant notes, Plaintiff's complaint does not specifically allege that she was terminated because of her age.  *See* Doc. 1; Doc. 62 at 9.  However, Plaintiff does allege that she was "mistreated due to [her] age which is over forty," and seeks relief under the ADEA.  Doc. 1 at ¶¶ 10, 13, 19.  To the extent that Plaintiff's complaint could be read as an age discrimination claim based on her termination, the undersigned will now consider such claim.

The ADEA prohibits an employer from discharging, or otherwise discriminating against, an employee because of her age if she is at least forty years old.  29 U.S.C. §§ 623(a)(1), 631(a).  A claim of unlawful age discrimination under the ADEA may be established through direct or circumstantial evidence.  *See Van Voorhis v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 512 F.3d 1296, 1300 (11th Cir. 2008).

The Eleventh Circuit Court of Appeals has defined "direct evidence of discrimination as evidence that reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" *Id.* (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004)).  It consists of evidence that, if believed, would prove the existence of a fact without inference.  *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1558 (11th Cir. 1988); *see also Standifer v. Sonic-Williams Motors, LLC*, 401 F. Supp. 2d 1205, 1215 (N.D. Ala. 2005).  Alternatively, a plaintiff may prove discrimination by presenting circumstantial evidence regarding discrimination.  Evidence that suggests, but does not prove, a discriminatory motive is circumstantial by definition.  *Burrell v. Bd. of Trustees of Ga. Military Coll.*, 125 F.3d 1390, 1393-94 (11th

16

Cir. 1997).  When an ADEA claim is based upon circumstantial evidence, courts analyze the allocation of burdens and the presentation of proof under the framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (applying *McDonnell Douglas* to evaluate ADEA claims); *Mauter v. Hardy Corp.*, 825 F.2d 1554, 1556 (11th Cir. 1987) (same).

Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination, which "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  To establish a prima facie case of age discrimination, a plaintiff must show four things: "(1) that she was a member of the protected group of persons between the ages of forty and seventy; (2) that she was subject to adverse employment action; (3) that a substantially younger person filled the position that she sought or from which she was discharged; and (4) that she was qualified to do the job for which she was rejected." *Damon v. Fleming Supermarkets of Fla. Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999).

Once the plaintiff establishes a prima facie case of age discrimination, the burden shifts to the employer to rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for the adverse employment action.  *See McDonnell Douglas*, 411 U.S. at 802–03.  "This burden is one of production, not persuasion . . . ." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).  Thus, "[t]o satisfy that burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'"  *Combs v.*

17

*Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (quoting *Burdine*, 450 U.S. at 254–55).

If the employer produces evidence of a legitimate, nondiscriminatory reason for the adverse action, the plaintiff is afforded an opportunity to show that the employer's stated reason is a pretext for discrimination.  *See, e.g.*, *Reeves*, 530 U.S. at 143; *McDonnell Douglas*, 411 U.S. at 804.  The plaintiff can show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. "In other words, the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs*, 106 F.3d at 1528.  If a plaintiff produces sufficient evidence that the employer's proffered reason is merely pretextual, that evidence may sometimes be enough to preclude summary judgment in favor of the employer. *See Reeves*, 530 U.S. at 148; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.").

Ultimately, a plaintiff "must show that the discriminatory reason was the but-for cause of the adverse employment action."  *Godwin v. WellStar Health Sys., Inc.*, 615 F. App'x 518, 527 (11th Cir. 2015) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177

(2009)); *see also Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1204 (11th Cir. 2010) ("[A]n ADEA plaintiff must establish 'but for' causality . . . the employer either acted 'because of' the plaintiff's age or it did not."). In *Gross*, the United States Supreme Court held that, in the context of the ADEA, age must be the reason that the employer decided to act. *Mora*, 597 F.3d at 1204; *see also Norris v. City of Millbrook*, No. 2:11-cv-051-MEF, 2011 WL 5553082, at *7 (M.D. Ala. Nov. 15, 2011). "In other words, the causation standard outlined in *Gross* . . . requires a plaintiff to prove that a challenged employment decision would not have occurred but for the defendant's consideration of [a plaintiff's age]." *Archie v. Home-Towne Suites, LLC*, 749 F. Supp. 2d 1308, 1315 (M.D. Ala. 2010). Importantly, it is not necessary to prove that age was the *sole* motivating factor in an adverse employment action, but, instead, was the but-for reason. *McQueen v. Wells Fargo Home Mortg.*, 955 F. Supp. 2d 1256, 1283 (N.D. Ala. 2013) ("[T]he defendant cites no authority for the proposition that the plaintiff cannot allege that race and age *both* caused the discrimination at issue. Nor does this court hold that the Supreme Court's decision in *Gross* should be read so restrictively."); *Archie*, 749 F. Supp. 2d at 1315 n.4 ("*[G]ross* requires 'but for' causation. It has long been the law that there is a difference between 'but for' causation and 'sole' causation.").

In this case, Plaintiff has failed to provide direct evidence of age discrimination, so she must rely on circumstantial evidence to sustain her claim. The undisputed facts show that Plaintiff was a member of a protected group; that her employment was terminated; that she was replaced by Alexander Wilson, who was approximately twenty-one years old (Doc. 54-2 at 1) at the time; and that Plaintiff was otherwise qualified for the job from

which she was terminated.  Thus, Plaintiff has demonstrated a prima facie case of age discrimination, and the burden shifts to Defendant to rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for termination.

Defendant has proffered as the reason for termination Plaintiff's insubordination through her actions in demanding that Mr. Lawson give her his gift cards.  Plaintiff has failed to demonstrate that the stated reason for termination is pretextual.  On the contrary, Plaintiff readily admits that "the gift card situation" led to her termination.  Doc. 1-1, at 2. She admits that Mr. Sedan chose to distribute gift cards to Mr. Lawson, that she told Mr. Lawson to give her the cards because she did not think he deserved them, that he then gave her the cards, and that she used the gift cards herself.  Because Plaintiff's insubordination regarding the gift cards was the stated reason for her termination and because Plaintiff has failed to point to evidence that the Defendant's proffered reason for termination is pretextual or that her age is the "but for" reason for her termination, Plaintiff's claim fails.

Further, Plaintiff has not identified a younger employee who engaged in similar conduct but whose employment was not terminated by Defendant.  *See Smith v. Library Bd. of City of Homewood*, No. 2:15-cv-02094-MHH, 2018 WL 2011026, at *9 (N.D. Ala. Apr. 30, 2018) (finding that the plaintiff had "not submitted evidence that a younger employee committed similar misconduct without receiving the same disciplinary response from the defendants.").  As the court explained in *Smith*, "[s]tanding alone, the fact that the defendants replaced [Plaintiff] with someone younger does not inevitably create an inference of age discrimination; if it did, then every prima facie case for age discrimination would survive the *McDonnell Douglas* inquiry."  *Id.*  This is particularly true when, as

here, the underlying facts which led to Plaintiff's termination are undisputed.  For these reasons, the undersigned concludes that Plaintiff's claim for age discrimination under the ADEA should be dismissed.

### iii.   Plaintiff's Claim for Pay Discrimination Based on Gender Under the EPA or Title VII

Plaintiff alleges in her complaint that her "employment benefits were depressed and not consistent with [Defendant's] men employees."  Doc. 1 at 2.  She also alleges that she was "passed over, a senior black employee, and the [Defendant] instead promoted less qualified white workers."  *Id.*  Plaintiff's allegations could be read as raising pay discrimination claims under Title VII or the EPA.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to compensation . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Plaintiff's Title VII claim also relies on circumstantial evidence, rather than direct evidence, so it must also be analyzed under the *McDonnell Douglas* framework, which requires a plaintiff to initially shoulder the burden of providing by a preponderance of evidence a prima facie case of discrimination.  *See, e.g.*, *Dent v. Fed. Mogul Corp.*, 129 F. Supp. 2d 1311, 1313-14 (N.D. Ala. 2001); *Ritchey v. S. Nuclear Operating Co., Inc.*, No. 2:07-cv-01844-RDP, 2010 WL 11520488, at *10 (N.D. Ala. Mar. 29, 2010).  "In order to establish a prima face case, a plaintiff must present 'evidence adequate to create an inference that an employment decision was based on an [illegal] discriminatory criterion. . . .'"  *Dent*, 129 F. Supp. 2d at 1314 (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517

U.S. 308, 312 (1996)).  Furthermore, Plaintiff must show "(1) that she is a member of a protected class; (2) that she was qualified for her job; (3) that she suffered an adverse employment action; and (4) that her employer treated similarly situated employees who are not members of the protected class more favorably." *Wood v. K-Mart Corp.*, 273 F. App'x 806, 807 (11th Cir. 2008) (citing *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 842-43 (11th Cir. 2000)).

In this case, Plaintiff's Title VII claim fails because she has failed to make a prima facie demonstration that Defendant treated similarly situated employees more favorably. Beyond bare allegations, Plaintiff has not put forth any evidence to support her claim.  To the extent that Plaintiff's allegation that she was replaced by Alexander Wilson as Team Leader could be read as a discrimination claim under Title VII, that claim fails because Defendant has demonstrated that, in fact, Plaintiff was paid more than Mr. Wilson. Plaintiff was paid more than provided for under Defendant's Team Leader pay scale for a Team Leader who had been employed for ten years, and she has not identified any similarly situated employee who was treated more favorably.  As to Plaintiff's allegations that she was "passed over" in favor of white employees, Plaintiff has not provided any evidence beyond her allegations to support this claim.  The undersigned notes that Mr. Wilson, who replaced Plaintiff as Team Leader after her termination, is African American.  Doc. 58-1 at 14.  For these reasons, the undersigned concludes that Plaintiff's Title VII claim for pay discrimination based on gender should be dismissed.

Plaintiff has also made allegations under the EPA which, in contrast to Title VII, focuses more narrowly on the "specific practice of paying unequal wages for equal work

to employees of the opposite sex." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1526 (11th Cir. 1992).   The undersigned notes that there is significant overlap between a claim under Title VII and one under the EPA. *Youngblood v. George C. Wallace State Cmty. Coll.*, No. 1:13-cv-33-MHT, 2014 WL 2961085, at *12 (M.D. Ala. July 1, 2014).   Under the EPA, a plaintiff must prove that she performed substantially similar work for less pay than employees of the other gender. *Id.* (citing *Miranda*, 975 F.2d at 1526). Thus, to establish a prima facie case under the EPA, a plaintiff must show that her employer "pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974) (quoting 29 U.S.C. § 206(d)(1)).   The same burden-shifting scheme applies to cases involving circumstantial evidence of a violation of the EPA; however, proof of intent is not required to state a prima facie case under the EPA. *Miranda*, 975 F.2d 1526. The Eleventh Circuit has explained the differences between a claim under the EPA and a claim under Title VII:

> The burdens of proof are different under the two laws.   A plaintiff suing under the Equal Pay Act must meet the fairly strict standard of proving that she performed substantially similar work for less pay.   The burden then falls to the employer to establish one of the four affirmative defenses provided in the statute.   Under the disparate treatment approach of Title VII, however, there is a relaxed standard of similarity between male and female-occupied jobs, but a plaintiff has the burden of proving an intent to discriminate on the basis of sex (or race or national origin).

*Id.*

Plaintiff's claim under the EPA fails for the same reason as her claim under Title VII. She has failed to demonstrate that Defendant paid her less than a member of the opposite sex for the same type of work. Outside of general allegations, Plaintiff has not provided any evidence of disparate pay. As discussed above, Plaintiff was paid more than provided for under the relevant pay scale and has not identified a specific employee who was similarly situated and treated more favorably. In Plaintiff's affidavit in response to Defendant's motion for summary judgment, she states that Brandon Lawson's affidavit "prove[s] equal work for equal pay violation on its face." Doc. 67 at ¶ 10. The undersigned is perplexed by this statement because Mr. Lawson's affidavit does not mention pay at all. In substance, it only addresses Mr. Lawson's version of events about the gift cards incident. Because Plaintiff has failed to demonstrate that Defendant paid her less than a member of the opposite sex for the same type of work, the undersigned concludes that Plaintiff has not presented a prima facie case for pay discrimination under the EPA and that her claim should be dismissed.

### iv. Plaintiff's Claim for Discrimination under Title VII

Plaintiff has made other allegations that could potentially support a timely Title VII race discrimination claim. Such a claim would also be evaluated under the Title VII disparate treatment framework discussed in detail above. *See Cobb v. Ala. Dep't of Human Resources*, No. 2:09-cv-226-MEF, 2010 WL 11553209, at *5 (M.D. Ala. Aug. 3, 2010). Because Plaintiff's disparate treatment claim relies on circumstantial evidence, the undersigned will employ the *McDonnell Douglas* framework. Plaintiff's initial burden is to establish a prima facie case by demonstrating "(1) that she is a member of a protected

class; (2) that she was qualified for her job; (3) that she suffered an adverse employment action; and (4) that her employer treated similarly situated employees who are not members of the protected class more favorably." *Wood*, 273 F. App'x at 807.

The undersigned discerns two non-time barred incidents alleged in the complaint that could potentially give rise to Plaintiff's race discrimination claim. In the first incident, Plaintiff alleges that an employee of Defendant's, Terry Sedan, "undermined [her] authority" after Plaintiff clocked out and sent home Alexander and Alexis Wilson one day. Doc. 1-1 at 2; Doc. 54-2 at 1. In taking this action, Plaintiff had not consulted with Mr. Sedan, as she was required to do. When Plaintiff complained to the human resources assistant manager, a meeting was held with Mr. Sedan, Mr. Wilson, and Plaintiff. However, these facts, even if true, do not demonstrate that Plaintiff "was subject to an adverse employment action based upon the incident." Doc. 51 at 7. Accordingly, Plaintiff has failed to prove a prima facie case for racial discrimination under Title VII based on these facts.

The second 2016 incident involved company gift cards that Mr. Sedan awarded to another African American male, Mr. Lawson, instead of to Plaintiff. Doc. 1-1 at 2. After Mr. Lawson received the cards, Plaintiff approached him and told him that the gift cards should be hers because he was not working during the relevant time period for which the cards were awarded. *Id.* Mr. Lawson then gave Plaintiff the gift cards, but Plaintiff was later suspended and terminated based on the incident. *Id.* Mr. Lawson's affidavit relates that Plaintiff "told me that I did not deserve the gift cards since I was not there when they had worked and told me to give her the cards when I received them." Doc. 54-3 at 1. He

further explains that when he came back from lunch one day, Plaintiff "had her hand out and asked me where the cards were and I gave them to her," and that when Mr. Sedan asked him about the incident, Mr. Lawson "told him she had asked for the cards and I had given them to her." *Id.* Plaintiff does not dispute that the gift card incident was the reason Defendant gave for her termination.

Plaintiff's Title VII claim based on these facts fails because Plaintiff has not identified a similarly situated comparator who was outside of her protected class that Defendant treated more favorably. The undersigned notes that Plaintiff made allegations in her amended complaint "that she is aware of an incident of a white employee who stole material from the company to build and sell equipment." Doc. 37-1 at 7. In a prior order the undersigned denied Plaintiff's motion to amend (Doc. 51), and the undersigned notes that Plaintiff made no such allegations in her original complaint now pending before the court. It appears that Plaintiff testified about the incident at her deposition (Doc. 58-1 at 24–25), and Defendant included in its recitation of the undisputed facts that "[s]everal years ago, Safety Coordinator Chuck Branum made [human resources manager Josh] Simmons aware that some drums were missing, but it was never determined that another employee had taken the drums." Doc. 62 at 5.

The undersigned finds that even if it were to consider the drum incident in this motion for summary judgment, Plaintiff has failed to demonstrate the existence of a similarly situated comparator. When determining whether a similarly situated comparator exists, the Eleventh Circuit has emphasized that the comparator must be similar in all relevant aspects. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997), so that courts

26

will not second-guess an employer's reasonable decisions. *Wilson*, 376 F.3d at 1091. First, the undisputed facts show that a culprit in the drum incident was not even identified. Second, as the undersigned stated in a prior order, Plaintiff's allegations were that she was *given* the gift cards, which would put her in a different position than someone who had *stolen* company property. *See* Doc. 51 at 8–9. Additionally, to the extent that Plaintiff was terminated for stealing the gift cards from another *employee*, she still would not be similarly situated to a person accused of stealing from the *company*. *Id.* at 9. Thus, even if these allegations were properly before the court, Plaintiff has not demonstrated that she and the alleged drum thief were similarly situated. Accordingly, the undersigned concludes that Plaintiff's Title VII racial discrimination claim should be dismissed.

### v.   Plaintiff's Claim for Retaliation under Title VII, the ADEA, or the EPA

Plaintiff also claims that she was "retaliated against for a purpose that was aimed at relieving me of my employment status with the [Defendant]." Doc. 1 at 2.

The elements of a prima facie claim for retaliation are the same under Title VII, the ADEA, and the EPA. *See Litman v. Dristy*, 703 F. App'x 766, 770 (11th Cir. 2017). To establish a prima facie case of retaliation, Plaintiff must show that "(1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (quoting *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)). Protected expression includes filing complaints with the EEOC or through an employer's internal grievance procedure. *Berman v. Orkin Exterminating Co.*, 160 F.3d 697, 702 (11th Cir. 1998) (filing EEOC

complaint is protected conduct); *Rollins v. Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989) (internal complaints of discrimination are statutorily protected conduct).

 If a plaintiff can establish a prima facie case of retaliation, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 n.6 (11th Cir. 2000).  "If the defendant offers legitimate reasons, the presumption of retaliation disappears.  The plaintiff must then show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct." *Id.*

Defendant concedes that Plaintiff was subjected to adverse employment action in the form of termination, but contends that Plaintiff has not shown that she engaged in statutorily protected expression, has not established a causal connection between the alleged protected activity and any adverse action, and cannot establish that Defendant's legitimate, non-retaliatory reason for terminating her employment was pretextual.  Doc. 57 at 21–23.

The undersigned agrees with Defendant.  First, to establish the first element of a retaliation claim, Plaintiff must "show participation in a protected activity by demonstrating that she had a subjective, good-faith belief that her employer was engaged in unlawful employment practices and that her belief was objectively reasonable in light of the facts and record presented." *Brown v. City of Opelika*, 211 F. App'x 862, 863 (11th Cir. 2006) (citation omitted); *see also Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1312

(11th Cir. 2002); *Dimino v. Ga. Dep't of Admin. Servs.*, No. 1:13-cv-00195-ODE-RGV, 2014 WL 11444088, at *16 (N.D. Ga. Nov. 26, 2014).  In this case, Plaintiff barely has alleged and cannot establish that her belief that Defendant was engaged in unlawful conduct was objectively reasonable.  As discussed above, the majority of Plaintiff's alleged complaints occurred between 2009 and 2014, years before any alleged adverse action.  The only purported complaint that could have any remote temporal proximity to Plaintiff's termination was her June 2016 complaint to Ms. Hinson that Mr. Sedan had allowed Alexander and Alexis Wilson to work late.  However, even accepting Plaintiff's alleged facts regarding this incident as true, they do no rise to the level of an unlawful employment practice.  *See, e.g.*, *Collins v. Supreme Beverage Co.*, 2012 WL 4953155, at *10 (N.D. Ala. Oct. 12, 2012 (noting that a prima facie case of retaliation requires that the employee's "complaint was of some *federally protected* adverse employment action" (emphasis in original)).  Moreover, the undisputed facts show that during the meeting that resulted from Plaintiff's complaint to Ms. Hinson, "[Plaintiff] did not make any complaints" (Doc. 54-2 at 1) and no adverse employment action resulted.

Furthermore, Plaintiff's retaliation claims also fail because she has not established a causal connection between any alleged protected activity and an adverse employment action.  To establish a causal connection, Plaintiff must demonstrate that her alleged protected activity was the "but for" cause of her termination.  *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation."); *see also Mahone v. BBG Specialty Foods, Inc.*, No. 1:16-cv-655-SRW, 2018 WL 1526336, at *12–14 (M.D. Ala

Mar. 28, 2018) (holding "but for" causation applies to EPA retaliation claim); *Barnett v. Athens Reg'l Med. Ctr. Inc.*, 550 F. App'x 711, 714 (11th Cir. 2013) (noting that same standard applies to both Title VII and ADEA retaliation claim). In this case, the only adverse action that Plaintiff alleged was termination in June 2016. However, Plaintiff has failed to demonstrate any connection between a complaint that she made and her termination. It is undisputed that Plaintiff was terminated after telling Mr. Lawson to give her the gift cards and then using those gift cards herself. Plaintiff has failed to show that the stated reason for termination was pretextual. For these reasons, the undersigned concludes that Plaintiff's retaliation claims fail as a matter of law under Title VII, the ADEA, and the EPA, and should be dismissed.

### vi.    Plaintiff's Claim for "Breach of Employment Handbook Contract"

Plaintiff also alleges that she seeks relief under the "Alabama Breach of Employment Handbook Contract Alabama Law." Doc. 1 at ¶ 19.

Alabama law is well-settled that "employment is at will and is terminable by either party with or without cause. *Harper v. Winston Cnty.*, 892 So.2d 346, 351 (Ala. 2004); *Wal-Mart Stores, Inc. v. Smitherman*, 872 So.2d 833, 838 (Ala. 2003). "[A]n employer can discharge an at-will employee for a bad reason or no reason, and the employee has no right to recover damages for wrongful discharge unless the Legislature has created such a right." *Tyson Foods, Inc. v. McCollum*, 881 So.2d 976, 983 n.14 (Ala. 2003). To show that an employment contract is one other than terminable at will, a plaintiff must demonstrate the following three elements:

> (1) that there was a clear and unequivocal offer of lifetime employment or employment of definite duration, *Bates v. Jim Walter Resources., Inc.*, 418 So.2d 903 (Ala. 1982); (2) that the hiring agent had authority to bind the principal to a permanent employment contract, *Alabama Mills, Inc. v. Smith*, 237 Ala. 296, 186 So. 699 ([Ala.]1939); and (3) that the employee provided substantial consideration for the contract separate from the services to be rendered, *United Security Life Ins. Co. v. Gregory*, 281 Ala. 264, 201 So.2d 853 ([Ala.] 1967).

*Hoffman-La Roche, Inc. v. Campbell*, 512 So.2d 725, 728 (Ala. 1987).

Although a provision in an employee handbook can modify an employee's at-will status and create a unilateral contract, "[a] host of cases from Alabama state and federal courts have held that employers are entitled to prevail as a matter of law on contract claims founded upon employee handbooks that expressly disclaim an intention to make a contract or reserve to the employer the right to change policies unilaterally." *Butler v. Cleburne Cnty. Comm'n*, No. 1:10-cv-2561, 2012 WL 2357740, at *20 (N.D. Ala. Jan. 17, 2012); *see also Jackson v. Cintas Corp.*, 391 F. Supp. 2d 1075, 1102 (M.D. Ala. 2005).  The Alabama Supreme Court explained in *Hoffman-La Roche*, that there is "no reason why a policy contained in an employee manual issued to an employee cannot become a binding promise once it is accepted by the employee through his continuing to work when he is not required to do so." *Hoffman-La Roche, Inc.*, 512 So.2d at 733.  However, the court also explained that "if the employer does not wish the policies contained in an employee handbook to be construed as an offer for a unilateral contract, he is free to so state in the handbook." *Id.* at 734.  Accordingly, the Alabama Supreme Court "has repeatedly upheld summary judgments for employers when an employee handbook claimed a disclaimer

stating that the handbook was not to be considered a contract." *Michelin Tire Corp. v. Goff*, 864 So.2d 1068, 1076 (Ala. Civ. App. 2002).

In this case, Plaintiff has not disputed that Defendant's Team Member Handbook specifically states, "[t]his handbook is not a contract nor offer to contract."  Doc 58-2 at 13.  The handbook also states that Team Members are employed at will unless "they have a written employment contract signed by the president of Hwashin . . . and approved by the designated Hwashin America Corporation Management Team by written resolution." *Id.*

Plaintiff has neither produced nor alleged the existence of any such written contract. Accordingly, Plaintiff cannot establish a breach of contract claim based on Defendant's Team Member Handbook, and the undersigned concludes that her claim for "breach of employment handbook contract" should be dismissed.

### vii.    Plaintiff's Claims for Harassment and/or Failure to Promote

Plaintiff's complaint also contains allegations of "failure to promote" and that "the environment at work was very hostile and disrespectful and in violation of the [Defendant's] handbook."  Doc. 1, at ¶¶ 8, 13.  To the extent that the allegations could be construed as alleging a claim under Title VII for harassment or failure to promote, the undersigned concludes that these claims should be dismissed.

First, to the extent she seeks to raise claims for failure to promote or hostile work environment harassment under Title VII, Plaintiff failed to exhaust her administrative remedies.   Plaintiff's EEOC charge did not raise failure to promote or hostile work environment harassment.  Doc. 58-1 at 42–45.  All of the timely factual allegations in the

charge relate to Plaintiff's termination claim.  Nothing relates to a harassment claim or a failure to promote claim.  *See Tompkins v. Montgomery Cnty. Bd. of Educ.*, 926 F. Supp. 2d 1274, 1285 (M.D. Ala. 2013) (dismissing on summary judgment a plaintiff's hostile work environment claim for failure to exhaust administrative remedies when the claim was not included in the plaintiff's EEOC charge); *see also Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000) ("The filing of an administrative complaint with the EEOC is ordinarily a jurisdictional prerequisite to a Title VII action.").

Moreover, Plaintiff has failed to allege, much less present evidence of, activity that would give rise to a claim under Title VII.  With respect to Plaintiff's potential harassment claim, it is important to note that "Title VII prohibits all discrimination in employment based upon *race, sex, and national origin*."  *Burdine*, 450 U.S. at 259 (emphasis added). Title VII is not a code of civility, and thus does not protect against all inappropriate or unwanted workplace interactions.  *See Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) ("Title VII is not a civility code, and not all profane or sexual language or conduct will constitute discrimination in the terms and conditions of employment.").

The undersigned has previously addressed Plaintiff's potential Title VII claims with respect to the incident involving Alexander and Alexis Wilson—as well as the gift cards incident that led to her termination—and found that Plaintiff failed to state a prima facie case under Title VII.  Similarly, these claims do not give rise to a harassment claim because they do not show discrimination on the basis of race, sex, or national origin.  Moreover, as the undersigned has previously noted, the other incidents alleged in the complaint occurring

in 2014 or before are time barred under Title VII and should be dismissed for failure to exhaust administrative remedies.

With respect to Plaintiff's allegations of discriminatory failure to promote, Plaintiff has failed to make a prima facie showing that she: (1) is a member of a protected minority; (2) was qualified and applied for a promotion; (3) was rejected despite her qualifications; and (4) other equally or less qualified employees who are not members of the protected minority were promoted. *Tucker v. Sejong Ala., LLC*, No. 2:11-cv-268-MEF-WC, 2012 WL 2389327, at *5 (M.D. Ala. May 4, 2012). Plaintiff has failed to provide evidence satisfying elements (2), (3), or (4). Accordingly, the undersigned concludes that Plaintiff's Title VII failure to promote claim should be dismissed.

### viii.   Plaintiff's Claim for "Due Process"

Finally, it is unclear whether Plaintiff is attempting to assert a due process clause violation against Defendant. However, in paragraph nineteen of Plaintiff's complaint she states that she is "seeking relief under the . . . U.S[.] Due Process of Law Statute." Doc. 1 at 3. The Fourteenth Amendment of the United States Constitution protects against deprivation by *state action* of a constitutionally protected interest in "life, liberty, or property" without the due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Due process violations—both procedural and substantive—are brought pursuant to 42 U.S.C. § 1983.

Defendant has not specifically moved to have Plaintiff's "U.S. Due Process of Law Statute" claim dismissed. This may be because Defendant does not believe that Plaintiff made such a claim. Although that may be the case, such a claim against Defendant would

be futile, because a § 1983 violation requires state action, and nothing in Plaintiff's complaint alleges that Defendant is a state actor.  Thus, to the extent that Plaintiff is asserting such a claim against Defendant, the undersigned concludes that it should be dismissed.

## IV.    Conclusion

For the reasons stated above, it is

ORDERED that Defendant's motion to strike (Doc. 63) is GRANTED.

ORDERED that Plaintiff's motion for alternative dispute resolution (Doc. 61) is DENIED as MOOT.

It is the RECOMMENDATION of the undersigned Magistrate Judge that Plaintiff's Motion for Summary Judgment (Doc. 54) be DENIED, that Defendant's Motion for Summary Judgment (Doc. 56) be GRANTED, and that this case be dismissed.

It is further

ORDERED that the parties must file any objections to the said Recommendation on or before **January 18, 2019**.  The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v.*

*Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885

F.2d 790, 794 (11th Cir. 1989).

     Done this 4th day of January, 2019.

<u>/s/ Wallace Capel, Jr.</u>
CHIEF UNITED STATES MAGISTRATE JUDGE